IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PDVSA SERVICES, INC.,            §
                                 §
                 Plaintiff,      §
                                 §
VS.                              §   CIVIL ACTION H-09-364
                                 §
TRANSEGURO C.A. DE SEGUROS,      §
                                 §
                 Defendant.      §

**OPINION AND ORDER STAYING**

**AND ADMINISTRATIVELY CLOSING CASE**

Pending before the Court in the above referenced cause, arising from a contingent liability based on two Letters of Guarantee issued by insurance-provider Defendant Transeguro C.A. de Seguros ("Transeguro"), relating to an underlying breach of contract dispute, is Defendant Transeguro's motion to dismiss, stay, and/or abate (instrument #33).

After considering the parties' submissions and the applicable law, the Court concludes this action should be stayed and administratively closed until final resolution of a related action.

**Relevant Facts**

In this action Plaintiff PDVSA Services, Inc. ("PSI"), owned by, and the international purchasing agent of, Bariven S.A., seeks to recover $44,025,568.14 in damages from Transeguro, plus

-1-

attorney's fees and expenses, arising out of a breach of two sales contracts ("Contract 632" and "Contract 757") entered into by and between PSI and Bariven S.A. to purchase thousands of tons of bulk food commodities (refined sugar and beef) from Validsa, Inc. d/b/a Dexton Validsa, and Dexton S.A. (collectively, "Dexton").  Under the terms of the two purchase orders/commodities contracts, PSI asserts that it paid Dexton in advance 30% of the value of each contract for these commodities, that Dexton breached these sales contracts, and that Dexton has refused to return the advance payments made by PSI.  Two Letters of Guarantee (Nos. 49-6112 and 49-6113[1]) purportedly require Transeguro to indemnify PSI for Dexton's failure to perform under the purchase orders/commodities contracts by guaranteeing repayment of the advance payments. Copies of the Letters of Guarantee are attached to the Complaint (#1, Exs. A and B).

According to PSI, the first article[2] in the General Terms

---

[1] Letter of Guarantee 49-6112 (Ex. A) relates to advance payments of $13,407,600 for purchase a delivery of 100,000 metric tons of sugar, while Guarantee 49-6113 (Ex. B) relates to advance payment of $31,173,976 for purchase and delivery of 24,000 metric tons of beef.

[2] Article 1 states,

THE COMPANY [Transeguro] shall compensate THE CREDITOR [PSI] up to the limit of the amount being guaranteed within the present Guaranty Agreement, for damages and losses originating from the PRINCIPAL's [Dexton's] nonfulfillment of obligations being guaranteed by the present Agreement, provided that said nonfulfillment shall originate from breaches which are attributable to

document for both Letters includes a provision stating that to trigger the guarantee by Transeguro to indemnify PSI, the failure to perform must be the result of a breach by Dexton.  PSI claims that it made written demands on Transeguro in accordance with Article 4 of the General Terms of the Letters of Guarantee.  PSI alleges that Transeguro breached the Letters of Guarantee when it refused to honor timely the written demands.  Transeguro has declined to repay PSI's advance payments.

On June 12, 2008, Dexton filed a suit for breach of contract against Bariven and PSI, including allegations of anticipatory repudiation of the two sales contracts, in the United States District Court for the Southern District of Florida,[3] *Validsa, Inc. v. PDVSA Services, Inc.*, 1:08-cv-21682.  PSI and Bariven filed a counter-claim against Dexton for breach of the same two sales contracts.  The parties filed cross-motions for summary judgment on the issue of liability.  On July 10, 2009 the Florida federal court

---

THE PRINCIPAL [Dexton].

[3] To clarify the choice of fora in Florida and Texas for the two related suits, the complaint states that PSI is a corporation organized under the laws of the state of Delaware, with its principal place of business in Houston, Texas.  Transeguro is a corporation organized under the laws of the Bolivarian Republic of Venezuela, with its principal place of business in that country.  Dexton is a corporation organized under the laws of Florida, with its principal place of business in Miami, Florida.
    The Letters of Guarantee both state, "For all purposes pertaining to the present Agreement, the State of Texas in the United States of America is being designated as a specific domicile, and the parties are affirming that they shall accept the jurisdiction of its courts."

concluded that PSI and Bariven, not Dexton, had breached all of the contracts and that Dexton was not liable for breach of contract to PSI/Bariven; it therefore granted summary judgment for Dexton. PSI/Bariven did not request an expedited appeal of the liability ruling. Subsequently, according to a joint status update (#41), filed on April 14, 2010 pursuant to court order, a bench trial on damages was held in the Florida action on January 11 and 12, 2010. The Florida district court found that Dexton was entitled to damages in the amount of $40,764,093.30, and that Bariven and PSI were entitled to an offset in the amount of $44,580,576, a sum that represents the advance payments made to Dexton, the guarantee of which is at issue in the instant case before this Court. The Florida district court ordered Dexton to return to Bariven and PSI the sum of $3,816,482.70, or the difference between the offset in favor of Defendants and the judgment in favor of Dexton. Bariven and PSI have appealed the decision, and Dexton has cross-appealed. According to the joint status update, "The resolution of the various issues on appeal may affect the amounts in the Validsa [Dexton] Action, either increasing or decreasing the net of the judgment and offset amounts due to Defendants."

Meanwhile, on February 9, 2009 PSI filed the instant suit to enforce the Letters of Guarantee and recover reimbursement from guarantor Transeguro for PSI's advance payments to Dexton. In August 2009 (#29), this Court denied a motion from Dexton to

-4-

intervene.  In that opinion, the Court wrote, "The outcome of the Florida action is dispositive on the issue of whether Article 1 in the Letters of Guarantee Contracts 632 and 757, requiring a breach by Dexton[,] has been triggered." #39 at 4.  As noted, the Florida district court has determined that Dexton did not breach the contracts as a matter of law.

### First-To-File Rule

Although not identified as such, the alternative nature of remedies requested in Transeguro's motion and the circumstances here strongly suggest application of the first-to-file rule.  Under that rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the two cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).  Because the responsibility of determining whether the two related cases involve substantially similar issues and whether they should proceed rests with the court presiding over the first-filed action, the court presiding over the second-filed case should usually stay, dismiss or transfer its suit in deference to the court with the first-filed suit.  *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 & n.1 (5th Cir. 1985)[4];

---

[4] In *Western Gulf*, 751 F.2d at 728-29, the Fifth Circuit explained,

> "As between federal district courts, . . . the general principle is to avoid duplicative litigation." *Colorado*

*Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). This permits the first court to decide whether the second suit must be dismissed, stayed or transferred and consolidated. *Sutter Corp.*, 125 F.3d at 920. The first-to-file rule is based on "principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The rule "requires federal district courts--courts of coordinate jurisdiction and equal rank--to exercise care to avoid interference with each other's affairs." *West Gulf*, 751 F.2d at 728. The Fifth Circuit has stated that the rule should be applied "[i]n the absence of compelling circumstances." *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). One "compelling circumstance" recognized by courts in the Fifth Circuit is a suit filed in anticipation of being sued in order to obtain a more favorable forum or to avoid the first-to-file rule. *See, e.g., Johnson Bros. Corp. v. Int'l Brotherhood of Painters*, 861 F. Supp. 28, 29 (M.D. La. 1994); *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 298 (E.D. La. 1988).

To avoid wasteful duplication, "rulings that may trench upon the authority of sister courts,", and piecemeal resolution of

---

*River Conservation District v. United States*, 424 US. 800, 817 . . . (1976)(dictum). The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.

issues that require a uniform result, "the district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another court." *West Gulf*, 751 F.2d at 729.  Where that is not the case, rather than "outright dismissal," it may be appropriate to stay the second action to allow the first court to address motions pending before it and decide what the best procedure (e.g., transfer of the second suit and consolidation with the first, dismissal of the second suit) would be.  *Id.* at 729 & n.1.

Neither party has argued compelling circumstances here.

### Scope of Review

A court's review of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010).  If an exhibit attached to the complaint contradicts an allegation in the complaint, the exhibit controls.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).  The court may also take notice of matters of public record when considering a Rule 12(b)(6) motion.  *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

**Transeguro's Motion to Dismiss, Stay and/or Abate (#34)**

Transeguro's pending motion argues that because PSI's entire case against Transeguro rests on Dexton's liability for breaching the commodities sales contracts, the Florida court's decision that Dexton did not breach the contracts as a matter of law is dispositive of the issues here and that this case should be dismissed, stayed and/or abated pending final resolution of the earlier filed Florida action, to avoid costly duplication of litigation and potentially inconsistent results. Transeguro emphasizes that PSI therefore cannot fulfill the condition precedent under Article 1 of the Letters of Guarantee, i.e., a showing that Dexton breached the contracts.

**PSI's Opposition**

PSI first claims that the motion should be denied because none of the remedies Transeguro seeks (to dismiss, stay or abate) is warranted under the law. Not only does Transeguro fail to cite any legal authority, but it fails to state the legal standard for any of these remedies. Nor does Transeguro demonstrate how the facts of this cases apply to those standards.

PSI insists that its complaint not only asserts four counts, each a breach of contract, but it states facts to sustain each element of the claim in each count, showing (1) the existence of a valid contract, (2) performance or tendered performance by Plaintiff, (3) the breach of the contract by Defendant, and (4)

damages sustained as a result of the breach. *Franks Int'l, Inc. v. Smith Int'l, Inc.*, 249 S.W. 3d 557, 563 (Tex. App.--Houston [1st Dist.] 2008).   PSI maintains that developments in the Florida action have not precluded in any way PSI's action against Transeguro because PSI's claims are independent of the outcome of the Florida action.   PSI insists that the Florida action is relevant to only one aspect of two of PSI's claims here, i.e., the question of Dexton's fault.

According to PSI, Transeguro errs in contending that the only way PSI can prevail is if third-party Dexton breaches the contract. PSI insists that Transeguro undertook **two** obligations in the Letters of Guarantee:  the conditional one described by Transeguro, triggered only if Dexton breached the sales contracts, and an unconditional one, triggered in the event of a demand by PSI for reimbursement.   PSI points out that each of the two contracts is comprised of two parts:  (1) a two-page document titled "Letter of Guarantee" and (2) a one-page document titled "General Terms."  #1, Exs. A and B.[5]   PSI highlights a provision in each Letter of Guarantee stating that Transeguro is to act as "a joint and several guarantor and payor in relation to Dexton, S.A. . . ., according to

---

[5] The four counts for breach of contract are (1) Transeguro's alleged breach of the Letter of Guarantee portion of Contract No. 49-6112; (2) Transeguro's alleged breach of the General Terms portion of Contract No. 49-6112; (3) Transeguro's alleged breach of the Letter of Guarantee portion of Contract No. 49-6113; and (4) Transeguro's alleged breach of the General Terms portion of Contract No. 49-6113.

-9-

an amount of as much as [the amount of each advance payment] . . .
in order for reimbursement of an advance payment which [Dexton]
must provide for the aforementioned amount . . . ."  It is under
this provision, argues PSI, that Transeguro is unconditionally
obligated to reimburse PSI for the advance payments in the event of
a demand for repayment from PSI.  Each letter also states that "the
appended General Terms shall be an integral part of the present
Guaranty Agreement."  The General Terms document is comprised of
twelve articles, including Article 1, quoted above, on which
Transeguro relies and which PSI characterizes as "noticeably
different" from the provision in the letters that Transeguro is to
act as "joint and several guarantor and payor" in relation to
"reimbursement" of advance payments.  Insisting that the contract
language is plain on its face, PSI states that the concept of
reimbursement in the unconditional provision is different from the
concept of "compensation for damages and losses" in Article 1 of
the General Terms portion.  It argues that *Webster's Third New
International Dictionary* defines "reimburse" as "1.  to pay back
(an equivalent for something taken, lost, or expended) to someone:
repay.  2. to make restoration or payment of an equivalent to (as
a person)."  In contrast, "'compensate for damages' connotes the
return of some amount not necessarily equivalent to the amount
tendered, but rather driven by losses caused through the fault of
another."  #34 at 9.  Only PSI's interpretation of the agreements

-10-

gives effect to all the words and phrases in the documents, Plaintiff insists. Thus this action, predicated on Transeguro's unconditional obligation, is independent and viable regardless of the Florida court's summary judgment in favor of Dexton, which also may not survive on appeal.

Alternatively, should the Court find that the contract language is ambiguous, parol evidence should be admitted to determine the intent of the parties, argues PSI. Dismissal is inappropriate.

Transeguro's request to stay or abate should also be denied. "To demonstrate that judicial resources will be preserved by staying the current litigation until the conclusion of litigation in another case, the party seeking a stay should show that the current litigation is duplicative of litigation in another court." *Amini Innovation Corp. v. Classic World Imps., Inc.*, No. Civ. A. 3:04-cv-1218-B, 2005 WL 64611, *1 (N.D. Tex. Jan 12, 2005). "Concurrent actions pending in different federal courts are duplicative for the purpose of staying one action in favor of another when the overall content of each suit is not very capable of independent development, and will be likely to overlap to a substantial degree." *Superior Savings Ass'n v. Bank of Dallas*, 705 F. Supp. 326, 329 (N.D. Tex. 1989).

PSI contends that its breach of contract claims against Transeguro do not substantially overlap with the breach of contract

claims in the Florida action because the two cases involve different contractual arrangements between different parties. The Florida action addresses the interpretation and performance of five purchase order contracts between Bariven/PSI and Dexton, three of which have no connection to this case and none of which involve Transeguro as a party. This action focuses on $44 million that Transeguro contracted to pay unconditionally to PSI in the event that PSI demanded reimbursement of the advance payments made to Dexton; thus it requires interpretation of and examination of the performance under two Guarantee Agreements issued by Transeguro in favor of PSI. Furthermore, Florida is not a proper forum for this action because the General Terms section of each agreement contains a forum selection clause specifying that "for all purposes pertaining to this Agreement, the State of Texas in the United States of America is being designated as a specific domicile, and the parties are affirming that they shall accept the jurisdiction of its courts."[6] Thus, argues PSI, the claims do not involve common subject matter or core issues incapable of independent

---

[6] This Court notes that "a choice-of-forum clause does give a court jurisdiction over a nonresident defendant." *Goodman Co. v. A&H Supply, Inc.*, 396 F. Supp. 2d 766, 773-74 (S.D. Tex. 2005), *citing Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995)("A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable."). A forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching in creating the clause, enforce such consent. *Id.* at 774, *citing Kevlin*, 46 F.3d at 15.

development and are not substantially related to justify a stay. *Goldstein v. Dickinson*, 1998 U.S. Dist. LEXIS 805, *4-5 (N.D. Tex. Sept. 25, 1998)(denying motion to transfer because there was no substantial relationship to justify a stay where the two suits involved breaches of different contracts). Furthermore, the final outcome of the Florida case is not necessary to the disposition of this case.

### Transeguro's Reply (#35)

Reiterating that the only basis for liability under the Letters of Guarantee Contracts 632 and 747 is contained in Article 1 and charging PSI with contorting the language and taking the quoted words out of context. Transeguro provides the complete sentence upon which PSI relies for its argument of an unconditional guarantee and subsequent sentences:

> *That the company [which] I hereby represent is a joint and several guarantor and payor in relation to DEXTON, S.A.,* a shareholders' corporation which is registered within the Republic of Panama and is listed with the Public Registry of Panama according to Entry Number 592651, as well as being listed with the Corporations Division of the Department of State of Florida, in the United States, as Number G07327900054, with said company to be referred to herein as **THE PRINCIPAL**, according to an amount of as much as **THIRTEEN MILLION, FOUR HUNDRED AND SEVEN THOUSAND, SIX HUNDRED DOLLARS AND NO CENTS IN UNITED STATES CURRENCY** ($13,407,600.00), which, for reference purposes and solely for compliance with the provisions of Article 118 of the "Statute concerning the *Banco Central de Venezuela*," with the applicable exchange rate being TWO AND FIFTEEN ONE-HUNDREDTHS BOLIVARES (2.15 *Bolivares*) in order for reimbursement of an advance payment which the **PRINCIPAL** must provide for the aforementioned amount according to Purchase Order Number

-13-

> 5100061632, which bears the date of March 4, 2006 and
> pertains to **"SUPPLYING OF 100,000 METRIC TONS OF SUGAR,"**
> to be completed to ***PVDSA, Services, Inc.***, whose legal
> address is 1293 Eldridge Parkway, Houston, Texas, 77077,
> in the United States of America, and which shall be
> referred to hereinafter as **THE CREDITOR**.  The present
> Guaranty shall become applicable as of the date when the
> **PRINCIPAL** shall receive the aforementioned advance
> payment, and it shall remain valid until on (1) month
> after expiration of the delivery period and/or until
> February 10, 2009.  Upon the expiration of that period,
> any responsibility on the part of **THE COMPANY** shall
> cease. (emphasis in italics)

#1 at Ex. A at 1-2; Ex. B at 1-2.  The italicized terms simply identify Transeguro as Dexton's guarantor--nothing additional.  The language does not create an unconditional guaranty, especially when the Letter of Guarantee and the incorporated General Terms are read together.   In plain terms the two documents create contingent liability, predicated on a finding that Dexton failed to perform under the commodities contract, which is in accord with the common-law definition of a guaranty agreement.   A guaranty agreement creates a <u>secondary</u> obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform.  *Nu-Way Energy Corp. v. Delp*, 205 S.W. 3d 667, 682 (Tex. App.--Waco 2006), *cert. denied*, 552 U.S. 1039 (2007); *Byrd v. Estate of Nelms*, 154 S.W. 3d 149, 157 (Tex. App.--Waco 2004).  Because the Florida court has determined that PSI/Bariven, and not Dexton, breached the underlying commodities contracts, Transeguro cannot be liable under the Letters of Guarantee.  Therefore the Court should exercise its

-14-

inherent authority to control its docket and dismiss, or in the alternative, stay (abate) this matter until the Florida action concludes.

### PSI's Sur-reply (#36)

PSI contends that Texas law does not support Transeguro's narrow argument that a guaranty agreement can only create a secondary obligation contingent upon the fault of the principal in the underlying agreement. PSI insists that Texas law also recognizes unconditional, or absolute guarantees.

When a guarantor agrees to an absolute guarantee, it becomes a primary obligor and may be obligated to perform under the guarantee even where the obligee takes no action against the principal. *Hopkins v. First National Bank*, 551 S.W. 2d 343, 345 (Tex. 1977). An absolute guaranty is not a collateral agreement where the liability of the guarantor is conditioned upon establishing the liability of the principal. *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1252 (5th Cir. 1985)(applying Texas law). Therefore an absolute guarantor maybe be obligated to perform under the guarantee agreement even where the underlying agreement is not enforceable against the principal, or where the principal has no liability under the agreement. *Universal Metals & Mach, Inc. v. Bohart*, 539 S.W. 2d 874 (Tex. 1076). *See also Houston Sash & Door Co. v. Heaner*, 577 S.W. 2d 217, 221–22 (Tex. 1979)(enforcing absolute guarantee where

principal was not liable on underlying obligation because interest on the note violated usury law); *Reece v. First State Bank*, 566 S.W. 2d 296, 297 (Tex. 1978).

### Court's Decision

"A guaranty agreement is a contract in which one party agrees to be responsible for the performance of another party even if he does not have direct control." *Material Partnerships, Inc. v. Ventura*, 102 S.W. 2d 252, 258 (Tex. App.--Houston [14th Dist.] 2003, pet. denied), *citing Gooch v. Am. Sling Co.*, 902 S.W. 2d 181, 185 (Tex. App.--Fort Worth 1995, no writ).

Texas law recognizes both absolute (or primary) and conditional (or secondary) guaranty agreements. *Republic National Industries of Texas, LP, v. The LISI Company*, No. 2:06-CV-488, 2008 WL 4525105, *1 (E.D. Tex. 2008), *citing Universal Metals and Machinery, Inc. v. Bohart*, 529 S.W. 2d 874 (Tex. 1976).

Whether a contract is ambiguous is a question of law for the court. *Heritage Resources, Inc. v. NationsBank,* 939 S.W. 2d 118, 121 (Tex. 1996). A contract is ambiguous if its meaning is uncertain or doubtful or if it is subject to two or more reasonable interpretations, giving rise to a fact issue regarding the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W. 2d 587, 589 (Tex. 1996). In contrast, if the written contract's language can be given a certain or definite legal meaning or interpretation, it is not ambiguous and the court will

construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.
2d 391, 393 (Tex. 1993).   Merely because the parties argue
conflicting interpretations does not create an ambiguity. *Columbia
Gas Transmission*, 940 S.W. 2d at 589.

In construing a contract, the court attempt to ascertain the
true intentions of the parties as expressed in the writing. *Lenape
Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W. 2d 565, 574
(Tex. 1996).   The court must read the contract as a whole,
determining the effect and meaning of one part on any other part,
and presume that the parties intended every clause to have some
effect. *Heritage Resources*, 939 S.W. 2d at 121.  The court should
give terms their plain and generally accepted meaning unless the
writing demonstrates that the terms were used in a technical or
different sense. *Id*.   The court should give language in the
agreement its plain grammatical meaning unless doing so would
defeat the parties' intent. *DeWitt County Elec. Co-op, Inc. v.
Parks*, 1 S.W. 3d 96, 101 (Tex. 1999).  The court should enforce an
unambiguous contract as written. *Id*.

After reviewing both Guarantee contracts at issue in full, the
Court finds that they are not ambiguous.

Moreover, the Court reaffirms its earlier construction of the
contracts as a matter of law and agrees with Transeguro that its
guaranty to indemnify PSI for the advance payments to Dexton is
premised wholly on a judicial determination that Dexton is liable

for breach of the underlying contracts.   The Florida court has determined that Dexton is not liable for breach of the underlying sales contracts.   PSI's strained and unpersuasive argument that there is an unconditional guaranty embedded in the Letters of Guarantee is based on a few phrases taken out of context and misrepresents what the documents say.   *See Columbia Gas Transmission*, 940 S.W. 2d at 589 (For an ambiguity to exist, both parties' conflicting interpretations need to be reasonable.).

Thus if the district court's judgment is affirmed, PSI has not and cannot state a claim against Transeguro under the Letters of Guarantee and their General Terms section.   An affirmance would determine this action and require dismissal of this suit with prejudice.   Thus there is substantial overlap of the first-filed case with this action regarding the controlling question of Dexton's liability.   Furthermore, in the damages phase of the trial, the Florida judge awarded to Bariven and PSI, as an offset for the advance payments, a sum greater than that PSI seeks to recover here.   If PSI seeks to recover more, it can participate in the appeal of that judgment in Florida.

Because the Florida court's judgment is still subject to appeal and is thus not final, collateral estoppel does not apply.[7]

---

[7] A prior judgment has collateral estoppel effect if (1) the issue in the current suit is identical to the issue in the prior action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in the earlier action." *Stripling*

The Court concludes that the appropriate remedy here is to stay this action pending resolution of the appeal of the Florida court's judgment. Accordingly, the Court

ORDERS that Transeguro's motion to stay is GRANTED, while its motion to dismiss or abate is DENIED. The Court further

ORDERS that counsel for both parties shall inform the Court when the final appellate ruling issues and request that this case be reinstated on the Court's active docket for appropriate action.

Accordingly, this action is STAYED and ADMINISTRATIVELY CLOSED.

**SIGNED** at Houston, Texas, this 17th day of May , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

v. *Jordan Prod. Co.*, 234 F.3d 863, 868 (5th Cir. 2000). The party to be estopped from re-litigating the claim, here PSI, must have had a full and fair opportunity to litigate the issue. *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001). If the Florida district court's decision is finally affirmed, it would bar re-litigation of the issues raised here by PSI.